IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                  Plaintiff,

     v.

PACIFIC SEA FOOD, INC. and PACIFIC
GROUND TRANSPORT, INC.,

                Defendants.

CV-08-1143-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), filed this lawsuit on September 30, 2008, alleging that defendants, Pacific Sea Food, Inc. ("Pacific Sea Food") and Pacific Ground Transport, Inc. ("PGT") unlawfully retaliated against a former employee, Jesus Manuel Perez ("Perez"). Specifically, the EEOC alleges that PGT terminated Perez the day after he complained of discriminatory practices that Perez believed were because of his national

1 - FINDINGS AND RECOMMENDATION

origin. The EEOC alleges a single claim for violation of § 704(a) of Title VII, 42 USC § 2000e-3(a).

The EEOC has now filed a motion (docket #37), seeking partial summary judgment on liability and its entitlement to punitive damages. For the reasons that follow, the motion should be DENIED.

## STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." *Farrakhan v. Gregoire*, 590 F3d 989, 1014 (9th Cir 2010), citing *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986). In employment discrimination cases "very little evidence"

is required to survive summary judgment "because the ultimate question is one that can only be resolved through a searching inquiry – one that is most appropriately conducted by the factfinder, upon a full record." *Schnidrig v. Columbia Mach., Inc.*, 80 F3d 1406, 1410 (9th Cir) (internal quotations, citation omitted), *cert denied*, 519 US 927 (1996).

## FACTS

### I. Perez's Employment, Transfer to PGT, and Supervision by Munsterman

Perez is a Hispanic male who worked for Pacific Sea Food from August 17, 2003, until his separation from employment, effective June 15 or 16, 2007. For the majority of that time, he worked for Pacific Sea Food at its Clackamas, Oregon, location, doing garbage and cleanup in the warehouse. During the latter part of 2006, Perez began assisting with PGT, the separate trucking company, also located in the Clackamas facility. For budgetary reasons, Perez transferred to PGT full time in December 2006.

At PGT, Perez worked as a Cross Dock Assistant and was supervised by Mark Munsterman ("Munsterman"), General Manager for PGT. John Graham ("Graham") and David Harrison ("Harrison"), a Caucasian, also worked on the dock and reported to Munsterman. Graham was the highest ranking employee and supervised daily operations on the dock, but was not a "supervisor" for either Perez or Harrison for the purpose of determining raises.

### II. Performance Review Delay

As a general practice, defendants conduct performance reviews in January and also may complete more informal, mid-year reviews. Some time in January 2007, Harrison told Perez that he had received $1.00/hour raise. Perez Depo., p. 171. As of that time, Perez had only been

working under Munsterman for a short period of time and had not yet received a performance review from him.

In late January 2007, Perez had foot surgery, commenced medical leave, and was off work for several weeks. He was released to light duty, but there was no suitable work for him in the warehouse or on the dock. Despite any obligation to do so, defendants provided Perez with light duty work in the Human Resources Department ("HR") for about four weeks from late February to late March 2007, at his regular rate of pay.

Perez returned to the dock in about April 2007 to his same job and rate of pay. Some time after April 30, 2007, Perez sent Munsterman a letter inquiring about the status of his review and seeking $1.25/hour raise. Munsterman responded by preparing a performance evaluation and conducting a formal review. Prior to that review, Munsterman had not considered terminating Perez.

### III.  Initial Performance Review Meeting Between Munsterman and Perez

Munsterman began his performance review of Perez in the late afternoon of June 12, 2007. During that review Munsterman offered Perez a $0.50/hour raise. Perez responded by saying in a very "forceful" voice that if his wages were not increased by $1.00/hour, then he "had a good case of discrimination" because Harrison had received $1.00/hour raise in January 2007. Munsterman Depo., pp. 47-48. Perez believed he was entitled to the same raise.

Munsterman immediately suspended the initial performance review meeting because he felt Perez had become "very confrontational" and Munsterman no longer felt comfortable talking to him. *Id*, p. 48. Perez returned to work on the dock. Munsterman then asked Glenn Kasch

("Kasch"), one of PGT's more experienced managers, to join him for another meeting with Perez.

## IV. Subsequent Meetings and Factual Disputes

It is undisputed that Munsterman and Kasch met with Perez in a second meeting less than an hour later, called that second meeting off to consult with HR, conducted a third meeting with Perez where they put a final paycheck on the table and then sent him home with pay. However, the parties' views of what transpired during the second and subsequent meetings, as well as their views as to what inferences that may be drawn from the available testimony differ significantly. As discussed below, those factual disputes preclude summary judgment in favor of the EEOC.

## FINDINGS

## I. Liability on Retaliation Claim

### A. Analytical Framework

Claims for retaliation under Title VII may be analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 US 792, 802 (1973). *Stegall v. Citadel Broadcasting Co.*, 350 F3d 1061, 1065-66 (9th Cir 2003). In many Title VII retaliation cases, the employer moves for summary judgment, asserting that the plaintiff cannot meet his or her burden of establishing protected activity followed by a causally-connected adverse employment action. The employer's efforts are often thwarted, with the court noting the low quantum of proof required to survive summary judgment in the employment discrimination context:

> Moreover, "we require very little evidence to survive summary judgment precisely because the ultimate question is one that can only be resolved through a 'searching inquiry' – one that is most appropriately conducted by a factfinder, upon a full record." We

5 - FINDINGS AND RECOMMENDATION

>have often stated that, because motivations are difficult to
>ascertain, such an inquiry should be left to the trier of fact:
>"An employer's true motive in an employment decision is rarely
>easy to discern.  As we have previously noted, 'without a
>searching inquiry into these motives, those acting for
>impermissible motives could easily mask their behavior behind a
>complex web of post hoc rationalizations . . . .'"

*Id* at 1072-73 (internal brackets omitted), quoting *Sischo-Nownejad v. Merced Comm'y College Dist.*, 934 F2d 1104, 1111 (9th Cir 1991).

Assisting the plaintiff in such cases is the court's duty to view any reasonable inferences from the facts in favor of the nonmovant.  *Farrakhan*, 590 F3d at 1014.  In this case, the tables are turned.  Here, the *plaintiff* seeks summary judgment on the issue of liability against the employer.  As the non-movant, the employer now has that critical advantage.  The EEOC simply cannot overcome the force of that powerful rule in this case where motivation is paramount.

### B. Analysis

As noted above, significant disputes exist on precisely what inferences may be drawn from the events that unfolded after Munsterman suspended his initial performance review meeting with Perez.  The EEOC contends that Perez engaged in protected activity by complaining to Munsterman that he believed that the failure to give him a more significant raise was racial discrimination because Munsterman proposed a smaller raise than received by Perez's Caucasian coworker, Harrison.  Defendants dispute this characterization, contending that Perez was merely using legally loaded language in an effort to bolster his contention that he should be given a higher raise.[1]

---

[1] In support of that contention, defendants cite Perez's act – before the initial performance review meeting – of compiling a list of reasons why the events leading up to his performance review violated Title VII.  Baumgart Decl., Ex. A, p. 59 (Perez Depo. Ex. 15).

Even assuming that Perez engaged in protected activity and that the EEOC has met its prima facie burden, the EEOC would still not be entitled to summary judgment on the issue of liability. "In Title VII retaliation cases, once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory explanation for its decisions. *Yartzoff v. Thomas*, 809 F2d 1371, 1376 (9th Cir 1987) (citation omitted), *cert denied*, 498 US 939 (1990). Where an employer does so, "the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away." *Id* at 1377 (citation omitted). The burden of production again falls on the EEOC to show that the explanation is a pretext for impermissible retaliation. *Id*. This burden "merges with the plaintiff's ultimate burden of persuading the court that he is the victim of retaliation." *Id*.

Normally, when the parties reach this point, the plaintiff is merely attempting to stave off summary judgment by the employer and again has the advantage of having all reasonable inferences from the facts drawn in his or her favor. But here, defendants have that advantage. In order to obtain summary judgment, the EEOC must go well beyond proving that Perez is entitled to his day in court: it must establish that no reasonable factfinder could conclude that defendants did not discriminate against him. This it cannot do.

The EEOC contends that Perez was terminated; defendants contend he voluntarily resigned. Perez claims he did the same job and did it as well as his Caucasian coworker; defendants contend that Perez's performance did not merit an immediate raise of $1.00/hour. Perez contends that the Kasch's comment that "if you continue along those lines, we're going to have to part ways" (Perez Depo., p. 186) evidences discriminatory intent to terminate; defendants contend that Kasch was merely suggesting that they should take a break from what

7 - FINDINGS AND RECOMMENDATION

had become a contentious meeting.  Perez does not recall being offered any option of an immediate $0.50/hour raise followed by a review in 90 days with the possibility of getting an additional raise; defendants contend that they made that offer and kept it on the table, but that Perez flatly refused to take anything less than $1.00/hour and threatened a lawsuit if defendants did not meet his demand.  Perez contends he was given his final paycheck and sent home; defendants contend that after receiving his final paycheck, Perez asked them to consider a $0.75/hour raise, to which they responded by retaining the final paycheck, sending him home because they considered his emotional state to be a safety risk on the dock, and instructing him to call in the next day.  Finally, defendants contend that they carefully considered Perez's suggestion, ultimately concluding that their offer of $0.50/hour immediately with a review in 90 days was fair and reasonable and leaving that offer open, but that Perez picked up his final paycheck.

There is simply no way around the factual disputes in the record regarding the motivations that led to Perez's separation from defendants' employ.  Thus, the EEOC is not entitled to summary judgment on the issue of liability.

### III.  Punitive Damages

The EEOC also seeks summary judgment on its claim for punitive damages.  A prevailing party in a Title VII case may recover punitive damages only by demonstrating that the employer "engaged in a discriminatory practice . . . with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 USC § 1981a(b)(1); *see Kolsted v. Am. Dental Ass'n*, 527 US 526, 534 (1999).  Even if the plaintiff makes this showing, the employer may nonetheless "escape punitive damages if it can show that the challenged actions

were not taken by senior managers and were contrary to the employer's good faith implementation of an effective antidiscrimination policy." *Costa v. Desert Palace, Inc.*, 299 F3d 838, 864 (9th Cir 2002) (citations omitted), *aff'd on other grounds*, *Desert Palace, Inc. v. Costa*, 539 US 90 (2003).

It is premature at this stage to grant summary judgment on the issue of entitlement to punitive damages. As discussed above, factual disputes preclude summary judgment on the issue of liability for a Title VII retaliation violation and a factfinder may reasonably conclude that the record reflects a legitimate impasse over the raise warranted by Perez's performance rather than unlawful retaliation on the part of defendants. Accordingly, this portion of the EEOC's motion should also be denied.

## RECOMMENDATION

The EEOC's motion for summary judgment (docket # 37) should be DENIED.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due May 7, 2010. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 20th day of April, 2010.

        _/s/ Janice M. Stewart_____
        Janice M. Stewart
        United States Magistrate Judge